UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ALLISON FAULKNER                                                    Plaintiff

v.                                                    Civil Action No. 3:23-cv-00588-RGJ

DENTAL ASSISTING ACADEMY OF                                        Defendant
LOUISVILLE, LLC

* * * * *

**MEMORANDUM OPINION & ORDER**

Defendant, Dental Assisting Academy of Louisville, LLC ("MedQuest"), moves for summary judgment on Faulkner's claim for interference with her rights under the Family and Medical Leave Act (FMLA), FMLA retaliation, disability discrimination in violation of the Kentucky Civil Rights Act (KCRA) and Americans with Disability Act (ADA), failure to accommodate in violation of the KRCA and ADA, and retaliation under the KRCA and ADA. [DE 30]. Plaintiff Allison Faulkner ("Faulkner") responded [DE 36] and MedQuest replied [DE 37]. Faulkner moves this Court to disregard MedQuest's reply or, in the alternative, for leave to file a sur-reply. [DE 39]. MedQuest responded [DE 40] and Faulkner replied [DE 41]. These matters are ripe. For the reasons below, Faulkner's Motion to Disregard or for Leave to File Sur-Reply [DE 39] is **DENIED** and MedQuest's Motion for Summary Judgment [DE 30] is **DENIED in part and GRANTED in part**.

I.        BACKGROUND

In July 2017, MedQuest hired Faulkner as "Director of Career Services" at MedQuest's campus located in Louisville, KY. [DE 30 at 199]. MedQuest offers studies in areas such as dental and medical assisting, sonography, and veterinary practice at campuses in Louisville and Lexington, Kentucky. [*Id.*]. As Director of Career Services, Faulkner's responsibilities included

1

assisting students with career placements, reporting employer placements, verifying employer compliance, and conducting outreach to prospective employers. [*Id.*; DE 20 at 138].

Beginning in March 2020, as the result of the COVID-19 pandemic, MedQuest allowed Faulkner to work remotely as the Director of Career Services. [DE 30 at 200]. After MedQuest's campuses reopened in May 2020, Faulkner was permitted to continue working remotely four days per week through December 2021. [DE 30-3 at 245-46]. In early 2022, MedQuest's Executive Director and then-interim Louisville Campus Director, Robin Boughey ("Boughey"), informed Faulkner that she would no longer be permitted to work remotely. [DE 30 at 200].

### i.   *First accommodation request*

In May 2022, Faulkner submitted a "Documentation of Disability Form" to MedQuest. [DE 30 at 200]. The form stated that Faulkner had been diagnosed with an "anxiety + panic disorder," which interfered with her "ability to concentrate at work [and] causes mental distress." [*Id.*] The form contained a note from Faulkner's medical provider recommending that she be allowed to "work from home when able to do so." [*Id.*] Following receipt, MedQuest authorized Faulkner to continue working remotely four days per week.

On October 14, 2022, the Campus Director and Faulkner's direct supervisor, Allison Ellerbrock ("Ellerbrock"), placed Faulkner on a Performance Improvement Plan ("PIP"), citing several occasions where Faulkner was allegedly "rude" and "disrespectful" to another MedQuest employee. [*Id.*]. Shortly thereafter, on October 26, 2022, Ellerbrock notified all MedQuest employees, including Faulkner, that they would be required to return to campus full-time in January 2023. [DE 36 at 1526].

ii. *FMLA leave and MedQuest reorganization*

On November 1, 2022, Faulkner formally requested FMLA leave from Boughey, the executive responsible for ADA/KCRA and FMLA requests at MedQuest. [DE 30 at 201]. Faulkner requested 30 days leave beginning the day employees were required to return to office, and subsequently requested an extension of 60 days through March 2023. [*Id.*]. Faulkner's first FMLA form state that she would be "incapacitated" during the time she was requesting leave due to "Anxiety Depression" and was referred for "[c]ounseling" during that time. [DE 35-24 at 1435]. The second FMLA form states that Faulkner "meets the criteria for Generalized Anxiety Disorder with panic attacks" and that Faulkner would continue her current treatment of "Mental Health Therapy" for a duration of 8 weeks. [DE 35-25 at 1440]. MedQuest granted both of Faulkner's FMLA requests. [DE 30 at 201].

During Faulkner's FMLA leave, her job responsibilities were performed by other MedQuest employees, including Ellerbrock and a part-time employee hired specifically to cover Faulkner's job duties while she was out. [DE 36 at 8; DE 30-10 at 296-297]. In January 2023, while conducting employment verifications, Ellerbrock determined that out of "approximately 100 potential employment placement verifications," Faulkner had verified "less than 5." [DE 30 at 201]. These verifications were important for MedQuest's accreditation [*id.* at 199] and were due annually to the Accrediting Bureau of Health Education Schools in the first week of November. [DE 33 at 417]. At some point during her leave, an employee who worked in the same department at MedQuest, Danielle Doyle ("Doyle"), resigned. [DE 30 at 202]. Instead of filling Doyle's vacancy, MedQuest decided to consolidate Doyle's position and duties with others in the department, including Faulkner's. [*Id.*].

Faulkner returned from FMLA leave to in-person employment on March 29, 2023. [*Id.*] Faulkner learned that some of Doyle's duties had been reassigned to Faulkner and that certain of her previous duties has been eliminated. [*Id.*; DE 30-10 at 296-297]. Her official title had been changed from "Director of Career Services" to "Director of Career/Student Services." [DE 30 at 202; DE 36 at 1526]. In a "Memorandum of Understanding," Ellerbrock informed Faulkner that her new role was "considered equivalent to your previous role as it is at the same director level, same pay rate, same schedule, and similar functionality." [DE 30-10 at 296-297].

### iii. Second accommodation request

On March 30, 2023, the day after returning from FMLA leave, Faulkner submitted an updated version of the first Disability Documentation Form completed by Faulkner's provider that requested an accommodation to work fully remotely and specifically noted Faulkner's anxiety was triggered by driving. [DE 30-7 at 285]. Boughey stated that he would review Faulkner's request and share it with Ellerbrock. [*Id.*]. On April 11, 2023, Boughey sent Faulkner a "more detailed [disability documentation] form that [MedQuest was] transitioning to" and requested that Faulkner have her provider complete it within 10 days. [DE 30-7 at 280-85]. Faulkner replied that her provider was not available for an appointment until May 19, 2023, and requested interim accommodations until both parties could complete the "interactive process." [*Id.*].

On April 20, 2023, Ellerbrock and Boughey completed an annual "Performance Review" of Faulkner. [DE 30-8; DE 33-12; DE 33 at 488]. Faulkner's overall performance was rated "2.6," which was short of "meets expectations." [DE 30-8].[1]

The next day, April 21, 2023, Boughey offered the following "temporary" accommodations: (1) relocating Faulkner's office to a more private location and providing a

---

[1] In comparison, Faulkner's prior annual review rated her performance a "3.7," indicating that Faulkner "[met] expectations." [DE 33-12].

sound-machine for a reduction of outside noise; (2) the ability to work remotely after appointments scheduled out of the office; (3) the ability to use PTO/sick time or to take the day off without pay; and (4) reimbursement of transportation expenses in the event of a "flare up" if Faulkner's presence on campus was necessary. [DE 30-7 at 280-85]. Boughey further stated during Faulkner's FMLA leave, Ellerbrock had done a "substantial review of the essential functions" of Faulkner's previous position and that her performance was "not satisfactory" and did not "indicate full-time work." [*Id.*] Boughey cited the following conclusions of Ellerbrock's report: (1) Faulkner's low placement verifications; (2) Faulkner's limited communications with employers, students, and staff; (3) the low time-commitment for one of Faulkner's responsibilities; and (4) poor support provided to Faulkner's direct report. [*Id.*] He explained that as a result of Ellerbrock's review, MedQuest "reorganized multiple positions" which resulted in "increased on-campus responsibilities" that were "essential components of the job." [*Id.*].

In response, on May 3, 2023, Faulkner expressed dissatisfaction that the "temporary accommodations of working remotely. . . which were previously allowed" were not being provided in the interim. [*Id.*] Specifically, Faulkner asserted that none of the proposed accommodations remediated the need to commute to work, an event she said exacerbated her impairments. [*Id.*] Boughey reiterated the previous offer of accommodations and that Faulkner's request to "work fully remotely for an indefinite period of time" was "inconsistent with the essential functions of [her] job." [*Id.*] Faulkner then provided notice to Boughey that she had decided to "consult with the EEOC and legal counsel… to ensure that [her] rights under the ADA are upheld." [*Id.*]

On May 19, 2023, Faulkner's medical provider completed the new disability documentation form which reported that Faulkner was impaired by "generalized anxiety + panic" and "migraine headaches" and noted again that her symptoms were triggered by driving. [DE 30-

13 at 302-04]. The form identified "working fully remotely – telework" as a possible accommodation which the provider indicated would lead to "improved concentration with less panic." [*Id.*]. On July 24, 2023, Faulkner filed a Charge of Discrimination with the EEOC for "discrimination based on disability, failure to accommodate, and retaliation." [DE 30-9 at 294].

On August 31, 2023, Faulkner filed a formal complaint against Ellerbrock with Boughey, stating that she felt there were "numerous concerns related to my situation over the last year with being overwhelmed in relation to my disability, retaliation after discussing my disability, and concerns with being overwhelmed and overall treatment," and that she felt she was "being treated differently and discriminated against." [DE 34-16 at 1036].

### iv. *MedQuest terminates Faulkner's employment*

In December 2023, MedQuest began outsourcing certain responsibilities, including "specific employment placement verification functions," to an outside vendor called "MMI." [DE 30 at 204]. This included the career placement verifications for which Faulkner was responsible. [*Id.*]. Faulkner filed her initial Complaint in this action alleging various ADA, FMLA, KRCA and wage/hour claims against MedQuest. [DE 1]. MedQuest terminated Faulkner, along with another MedQuest employee, on October 26, 2023. [DE 30 at 204].

## II. ANALYSIS

Because the outcome of Faulkner's Motion to Disregard or for Leave to File Sur-Reply [DE 39] has a bearing on the facts and arguments considered when reviewing MedQuest's Motion for Summary Judgment [DE 30], the Court addresses Faulkner's Motion first.

### A. Faulkner's Motion To Disregard Or For Leave To File Sur-Reply [DE 39]

#### 1. Standard

"Courts routinely disregard evidence and arguments that are raised for the first time in a reply brief." *See Gonzalez v. United States*, No. 1:22-CV-00091-GNS, 2023 WL 6051458, at *3 (W.D. Ky. Sept. 15, 2023) (quoting *Braun v. Ultimate Jetcharteres, Inc.*, No. 5:12CV1635, 2014 WL 12584328, at *1 (N.D. Ohio Feb. 25, 2014)). *See also Palazzo v. Harvey*, 380 F. Supp. 3d 723, 730 (M.D. Tenn. 2019) (explaining "this applies both on appeal… and to summary judgment motions filed in the trial court"). At the same time, the Sixth Circuit also recognizes that a defendant is generally entitled to address new arguments raised for the first time in a plaintiff's response. *Matthews v. Wells Fargo Bank*, 536 F. App'x 577, 579 (6th Cir. 2013); *see also Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476 (6th Cir. 2002) (explaining that, where a non-movant made factual allegations in her response to a motion for summary judgment that the movant had not previously had an opportunity to address, those allegations "warrant[ ] a reply brief and supporting affidavits that would not have been filed with the original summary judgment brief").

Whether to permit a party to file a sur-reply is a matter left to the Court's discretion. *Key v. Shelby Cnty.*, 551 F. App'x 262, 264 (6th Cir. 2014) (citing *Eng'g & Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010)); *Tanielian v. DaimlerChrysler Corp.*, 108 F. App'x 386, 387 (6th Cir. 2004). "Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003). "As many courts have noted, '[s]ur-replies. . . are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter.'" *Liberty*

*Legal Found. v. Nat'l Democratic Party of the USA, Inc*., 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) (quoting *In re Enron Corp*. Sec., 465 F. Supp. 2d 687, 691 n.4 (S.D. Tex. 2006)) (additional citation omitted). "The Sixth Circuit has held that a district court does not abuse its discretion in denying leave to file a sur-reply where the opposing party's reply did not raise any new legal arguments or introduce new evidence." *Id*.; *see, e.g., Key*, 551 F. App'x at 265 (holding that district court's denial of motion to file sur-reply was not abuse of discretion due to lack of new arguments raised in reply and six-month delay between filing of reply and motion for sur-reply).

### 2. Alleged New Arguments and Evidence

Faulkner claims that MedQuest's Reply "rais[ed] certain arguments and evidence for the first time related to the allegedly 'essential functions' of Ms. Faulkner's job, the interactive process, supposed 'threats' to Ms. Boughey, and whether Ms. Faulkner is 'disabled' within the meaning of the ADA." [DE 39 at 1570]. MedQuest maintains that its Reply brief "address[ed] the legal and factual arguments brought forth in Plaintiff's Response brief, and utilize[ed] the same evidence of record cited in both the initial motion and Plaintiff's Response. [DE 40 at 1588]. To the extent that the Reply cited different evidence, MedQuest argues, it was "simply addressing Plaintiff's points while bolstering its arguments made in the initial motion." [*Id.* at 1590].

#### i. *Essential functions*

Faulkner claims that MedQuest relied for the first time on testimony from Ellerbrock's deposition transcript to establish that "verification" and "data gathering" were essential functions of Faulkner's position as well as to establish that "her position was 'student-facing.'" [DE 39 at 1574, 1575]. This is not new evidence and certainly not a new argument. Faulkner's alleged failure to verify career placements was addressed repeatedly in MedQuest's opening brief and was supported by Ellerbrock's testimony as well as other exhibits. [*See, e.g.*, DE 30 at 201; DE 30-3;

8

DE 30-5]. Although MedQuest did not originally cite to Ellerbrock's testimony that Faulkner's position was "student-facing," MedQuest did support its claim with Boughey's testimony. [DE 30 at 215]. It is both permissible and expected that MedQuest would bolster its claim with corroborating statements from Ellerbrock in response to Faulkner's arguments that "Boughey's testimony. . . isn't what Defendant claims." [DE 36 at 1546].

        *ii.*    *Interactive process and "threat" to Boughey.*

Next, Faulkner argues that MedQuest raised a new argument as to why Faulkner did not participate in the interactive process in good faith—namely, an alleged "threat" to Boughey. [DE 39 at 1576 ("Defendant argues for the first time in its Reply that Ms. Faulkner "threatened" Ms. Boughey by informing her on May 3, 2023, that she'd retained counsel and filed a Charge of Discrimination with the EEOC.")]. This argument is also not new. The email to Boughey was attached as Exhibit 6 to MedQuest's Motion. [DE 30-7]. And although MedQuest characterized it as a "threat" for the first time in its Reply, MedQuest's argument was essentially unchanged. [*See* DE 30 at 217 ("MedQuest engaged in the interactive process with plaintiff. . . [b]ut plaintiff outright refused.")].

        *iii.*    *Whether Faulkner is disabled.*

Finally, Faulkner asserts that footnote 1 of MedQuest's Reply brief [DE 37 at 1561 (claiming Faulkner placed approximately 120,000 miles on her vehicle despite asserting that she was too anxious to drive)], is an attempt to argue that Faulkner is not "disabled." [DE 39 at 1581]. In contrast to the other allegations of new evidence, Faulkner is correct that this would be a novel argument. At no point does MedQuest's Motion challenge Faulkner's claim that she is "disabled" under the ADA and KRCA. This potential issue is moot, however, because MedQuest concedes that it has not made this argument. [DE 40 at 1591].

As there are no new arguments and evidence, disregarding any or all of MedQuest's Reply is unwarranted and no sur-reply is necessary or appropriate. Faulkner's Motion to Disregard or for Leave to File Sur-Reply [DE 39] is **DENIED**.

### B.  MEDQUEST'S MOTION FOR SUMMARY JUDGMENT [DE 30]

#### 1.  Standard

Under Federal Rule Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986*).* The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ.

P. 56(c)(1)(A). Alternatively, either party can meet its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(b).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586. Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (internal quotation marks omitted)). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

### 2. FMLA Claims

Faulkner alleges two claims under the FMLA (29 U.S.C. § 2601, *et seq*.): (1) interference; and (2) retaliation. The FMLA entitles eligible employees to take up to twelve weeks of leave during any twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Employees who return to work within the twelve-week statutory period are entitled to return to their previous position or an equivalent position. *Id.* at § 2614(a)(1).

An employer violates the FMLA when it "interfere[s] with, restrain[s], or den[ies] the exercise of or the attempt to exercise" FMLA rights. *Id.* at § 2615(a)(1); *see also Bryson v. Regis Corp.*, 498 F.3d 561, 569–70 (6th Cir. 2007). An employer is also prohibited under the FMLA from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful" under the FMLA. 29 U.S.C. § 2615(a)(2). At summary judgment,

both FMLA interference and FMLA retaliation claims are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Clemons v. Hillshire Brands Co.*, No. 23-5622, 2024 WL 3355379, at *2 (6th Cir. Apr. 11, 2024) (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 761-62 (6th Cir. 2012)). Accordingly, even if a plaintiff establishes a prima facie case of interference or retaliation, there is no "violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008).

       *i.    Interference*

To establish her prima facie case of FMLA interference, Faulkner must show that: (1) she was an eligible employee; (2) MedQuest was a covered employer under the FMLA; (3) she was entitled to take leave under the FMLA; (4) she notified her employer of her intent to take leave; and (5) MedQuest denied her benefits or rights to which he was entitled under the FMLA. *Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472, 475 (6th Cir. 2019). There is no dispute that Faulkner was a covered employee who was entitled to take FMLA leave, and that after giving the required notice she took FMLA leave. Rather, MedQuest argues only that Faulkner was not denied any benefits or rights to which she was entitled. As such, this Court need only determine whether there is a genuine dispute of material fact as to the last element.

Faulkner argues two theories of FMLA interference: (1) that MedQuest interfered with her FMLA rights by "demoting" her upon her return from FMLA leave rather than reinstating to her original position or an equivalent; and (2) that MedQuest interfered with her FMLA rights by later terminating her.

Here, on her first theory of FMLA interference, Faulkner has met her burden of showing that she was not returned to an equivalent position. An "equivalent position" is one that is "virtually

identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." *Grace*, 521 F.3d at 669 n. 13. Although the Court is unconvinced that Faulkner's reassignment from "Director of Career Services" to "Director of Career/Student Services" was a "demotion," both parties have submitted evidence that Faulkner's role before taking FMLA leave was substantially different from her role upon returning. It is not enough, as MedQuest claims, that Faulkner's new role came with "the same director level, same pay rate, same schedule, and similar functionality." [DE 30-10 at 296-297]. First, there is substantial evidence that Faulkner's new role contained *more* responsibilities than her prior position. Indeed, MedQuest later agreed to reduce some of her duties after Faulkner expressed that her new role was "too time consuming." [*Id.* at 202; *see also* DE 30-10 at 297]. MedQuest has also introduced evidence that Faulkner's new role came with "increased on-campus responsibilities." [DE 30-7 at 282]. In sum, the role Faulkner returned to was not "virtually identical" to the one she left. *Grace*, 521 F.3d at 669 n. 13.

Nevertheless, Faulkner has not met her burden with respect to her second theory of interference based on her termination. True, "the Sixth Circuit allows an employee to recover for retaliatory discharge under the FMLA's interference theory—not just under the retaliation theory." *Rasmussen v. Dufresne Spencer Grp., LLC*, No. 3:20-CV-447-DJH-CHL, 2023 WL 2291246, at *2 (W.D. Ky. Feb. 28, 2023) (citation modified). However, to pursue an interference claim based on termination, Faulkner must show that her termination was "based, in whole or in part, on the fact that [she] took FMLA-protected leave." *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007). Crucially, Faulkner offers no evidence of a "causal link" between her decision to take FMLA leave and eventual termination and instead attacks MedQuest's justification by arguing that

her "termination was unrelated to her job performance." [DE 36 at 1531-1534]. Even if that were true, it does not necessarily follow that her termination *was* related to her FMLA leave. The absence of evidence is especially glaring here, where the termination occurred almost a year after the original request, during which time MedQuest granted Faulkner's FMLA requests twice. *See Basch v. Knoll, Inc.*, 619 F. App'x 457, 460 (6th Cir. 2015) (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)) (rejecting temporal proximity as sole support for causation element where defendant had "repeatedly granted [plaintiff's] FMLA requests over a period of two-and-a-half years"). Moreover, it is undisputed that conversations to eliminate Faulkner did not take place until September 2023, nearly six months after she had returned from FMLA leave. [2] [*See* DE 34 at 847].

Accordingly, Faulkner having met her burden as to her first theory of FMLA interference, the burden shifts to MedQuest to offer a legitimate, nondiscriminatory reason for failing to reinstate Faulkner to an equivalent role. MedQuest satisfies this burden. It is undisputed that Doyle resigned while Faulkner was away on FMLA leave, and that rather than replacing Doyle, MedQuest decided to consolidate the "Director of Career Services" and "Director of Student Services." The changes to Faulkner's position upon returning were as a result of redistributing Doyle's responsibilities to other MedQuest employees, including Faulkner. This is a "legitimate reason unrelated to the exercise of [Faulkner's] FMLA rights." *Grace*, 521 F.3d at 670. *See also Madry v. Gib. Nat'l Corp.*, 526 F. App'x 593, 597 (6th Cir. 2013) ("We have previously found

---

[2] According to MedQuest, the decision to terminate Faulkner—due to "budget pressures, but also due to MedQuest['s] decision to outsource" to MMI—was made in "late summer 2023." [DE 30 at 203]. However, the only record evidence of the decision to terminate Faulkner is testimony elicited from Ellerbrock, which states the decision was made "very close to the very end of October" [DE 33 at 487], although discussions began in late September. [*See* DE 30-5 at 276 ("We were wrapping up the third quarter of our budget and realizing that we had -- financially we needed to make some changes quickly.")].

that the restructuring of a business was a legitimate, nondiscriminatory reason for terminating an employee who had incidentally taken FMLA leave.").

Thus, to survive summary judgment on her interference claim, Faulkner must show that MedQuest's proffered reason either (1) had no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Grace*, 521 F.3d at 677.

Faulkner does not satisfy this burden. The only argument Faulkner offers as to why MedQuest's decision must have been pretext is her assertion that MedQuest "identifies no factual support in the record whatsoever suggesting that it took any action based on 'company-wide restructuring' or anything else generally affecting its business." [DE 36 at 1530]. Rather, MedQuest "simply decided not to replace her." [*Id.*] Faulkner's reliance on this argument is misplaced. MedQuest does not need to offer evidence of "company-wide restructuring." The record is clear that once Doyle resigned, other employees absorbed her responsibilities. It also does not appear from the record that MedQuest's decision not to replace Doyle was an unreasonable exercise of judgment, absent any evidence to the contrary. [DE 30-10 at 297].

Accordingly, MedQuest's Motion as to Faulkner's interference claim under FMLA is **GRANTED**.

### ii.  *Retaliation*

To establish her prima facie case of FMLA retaliation, Faulkner must show that: (1) she was engaged in an activity protected by the FMLA; (2) MedQuest knew that she was exercising her rights under the FMLA; (3) after learning of her exercise of FMLA rights, MedQuest took an employment action adverse to her; and (4) there was a causal connection between the protected

FMLA activity and the adverse employment action. *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 573 (6th Cir. 2021).

Once again, MedQuest only challenges the last element—causation. For the reasons discussed above, Faulkner has failed to satisfy her burden of showing that there was a causal connection between her FMLA leave and MedQuest's decision to terminate her. MedQuest's Motion as to Faulkner's retaliation claim under FMLA is **GRANTED**.

### 3.  ADA and KCRA Claims

Faulkner alleges three claims under the ADA (42 U.S.C. § 12101, *et seq.*) and KCRA[3] (K.R.S. § 344.040): (1) discrimination; (2) failure to accommodate; and (3) retaliation. The Court addresses each category of claim in turn.

#### i.  Discrimination Claims

To recover on a claim for discrimination under the ADA and KCRA, Faulkner must show that she (1) is disabled; (2) is otherwise qualified to perform the essential functions of the position, with or without accommodation; and (3) suffered an adverse employment action because of her disability. *See Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996); *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 317, 321 (6th Cir. 2012) (en banc) (abrogating *Monette* in part by holding that a plaintiff must show that he or she suffered an adverse employment action "because of" rather than "solely by reason of" disability). To satisfy the last prong, Faulkner may introduce "direct evidence of discrimination, including evidence that the employer relied upon the

---

[3] Neither party disputes that Faulkner's claims under the ADA and KCRA require proof of the same elements. Indeed, as other courts have noted, the KCRA's language parallels that of the ADA and Kentucky courts interpret the KCRA consistently with the federal statute. *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007). Accordingly, for purposes of evaluating Faulkner's claims under the ADA and KCRA based on discrimination, failure to accommodate, and retaliation, the Court will look to the federal statute for both sets of claims.

plaintiff's disability in making its employment decision, or. . . indirect evidence of discrimination." *Monette*, 90 F.3d at 1178 (citation omitted).

A plaintiff can establish a prima facie case under the direct method by bringing direct evidence of discriminatory intent, such as a facially discriminatory employment policy or express statements of desires to remove employees. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Cases relying on indirect evidence employ the familiar *McDonnell Douglas* burden-shifting framework at summary judgment. *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023). First, Faulkner must make out a prima facie case of disability discrimination. This requires her to show that (1) she has a disability, (2) she is otherwise qualified for the position, with or without a reasonable accommodation, (3) she suffered an adverse employment decision, (4) her employer knew or had reason to know of her disability, and (5) she was replaced or her position remained open. *Id.* Second, if Faulkner makes the requisite showing, the burden shifts to MedQuest to provide "a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* at 567 (quotation omitted). Finally, if MedQuest offers a legitimate, non-discriminatory reason for its action, then the burden shifts back to Faulkner to show that MedQuest's provided reason amounts to "pretext designed to mask discrimination." *Id.* at 567 (quotation omitted).

As an initial matter, the parties dispute whether Faulkner has satisfied her burden of production under the direct method, or whether her discrimination claims must proceed, if at all, under the indirect method. Direct evidence "does not require the fact finder to draw any inferences" to conclude "that the disability was at least a motivating factor." *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 853 (6th Cir. 2018) (citation omitted). In the context of ADA claims, a statement that merely expresses concern about the plaintiff's ability to perform job requirements is not direct

evidence of disability discrimination. *See Wright v. Memphis Light, Gas & Water Div.*, 558 F.
App'x 548, 553 (6th Cir. 2014). Rather, evidence is direct evidence of disability discrimination
only if it reflects the employer's discriminatory animus. *See id.*

Faulkner fails to show any direct evidence of discrimination. Faulkner contends that there
are several facts that show her disability was at least a motivating factor for her termination. But
Faulkner's argument fails because the evidence she proffers—the fact that some of the MedQuest
employees who made the decision to terminate her were also involved in responding to her ADA
accommodation request, that the "investigation" following her formal complaint regarding
Ellerbrock was poorly handled, and that she was terminated near in time to filing the instant
action—are all examples of circumstantial evidence. Even if a jury were to conclude that this
evidence proved discriminatory animus, it would necessarily require an inference to reach that
conclusion.

Having failed to show any direct evidence of disability discrimination, Faulkner must
proceed under the indirect method.

> a. Whether Faulkner was "otherwise qualified" for her position is a
> genuine dispute of material fact.

MedQuest challenges only the second and fifth elements of *McDonnel Douglass*, or
whether Faulkner can show she is otherwise qualified for the position, with or without reasonable
accommodation, and that the position remained open while the employer sought other applicants,
or the disabled individual was replaced.

As to the second element, MedQuest argues that it is undisputed that Faulkner was unable
to complete the essential functions of her position. Specifically, MedQuest points to two essential
functions which it alleges that Faulkner was unable to perform with or without accommodations:
(1) placement verifications and employment data gathering; and (2) "[b]eing on campus" to assist

18

with student employment processes and prospects. [DE 30 at 215]. As defined in the statute, an individual is "otherwise qualified" if he or she can perform the "essential functions" of the job with or without reasonable accommodation. 42 U.S.C. § 12111(8). As the employer, MedQuest bears the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship on the employer. *Lemieux v. Louisville Metro Gov't,* No. 3:22-CV-151-RGJ, 2023 WL 8241569, at *2 (W.D. Ky. Nov. 28, 2023). A job function is essential if its removal would "fundamentally alter" the position. *Kiphart v. Saturn Corp.*, 251 F.3d 573, 584 (6th Cir. 2001) (citing 29 U.S.C. § 1630.2(n)). The determination of an essential function is highly fact specific, *Hoskins v. Oakland Cnty. Sheriff's Dep't*, 227 F.3d 719, 726 (6th Cir. 2000), and therefore "is typically not suitable for resolution on a motion for summary judgment." *Keith v. Cnty. of Oakland*, 703 F.3d 918, 925–26 (6th Cir. 2013).

Contrary to MedQuest's assertion, there is a genuine dispute of fact as to both (1) what the essential functions of Faulkner's job were, and (2) whether she was able to perform them, with or without accommodations. First, while Faulkner does not dispute that employment verifications and data gathering were essential functions of her position, she does dispute that she was unable to discharge this responsibility. Faulkner has submitted evidence, for example, showing she ultimately met the placement verification benchmarks that she was responsible for in 2023 [DE 33 at 420-21], and received a positive annual review in 2022 [DE 35-5], during which time Faulkner was working remotely four days a week. Second, although MedQuest insists that "[Faulkner]'s role was primarily a student-facing one, where she was expected to routinely me[e]t with MedQuest students and help with employment processes and prospects," there are questions of fact as to whether these meetings could be conducted remotely and about the quality of Faulkner's job performance. [*See, e.g.*, DE 35 at 1098 ("I was getting excellent feedback from students, and

I was meeting my metrics. And I was being more productive at home, as far as, you know, being able to focus.")]. At this stage, Faulkner has satisfied her burden.

<ol type="b" start="2"><li>Faulkner was not "replaced" and no other employees were "similarly situated."</li></ol>

Element five of the prima facie case requires Faulkner to show that, after her termination, her position remained open or that MedQuest replaced her with a non-protected individual. MedQuest argues that Faulkner cannot satisfy the fifth factor because although she was terminated, her "role was eliminated from the organization for budgetary reasons, and outsourced to MMI." [DE 30 at 213]. Faulkner does not dispute that her position was eliminated and that her duties were reassigned to other employees or outsourced to MMI. Instead, she points to evidence that her "counterpart" at the Lexington campus, Stephanie Slone ("Slone"), was not terminated and in fact still performs similar duties while assisting a similar number of students as Faulkner. [DE 33 at 337-38]. MedQuest denies that Slone is "similarly situated" because she holds additional titles, performs other functions than Faulkner, and because there is no evidence that Slone similarly failed to perform her placement verification duties.

When an employee is terminated as part of a reduction in force, the terminated employee may also satisfy the last factor by showing that similarly situated non-disabled employees were treated more favorably. *Thomas v. Mech. Consultants, Inc.*, 655 F. Supp. 2d 756, 761 (W.D. Ky. 2009). *See also Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998) (the final prong in *McDonnell Douglass* framework can be satisfied "where he or she demonstrates that a 'comparable non-protected person was treated better.'"). To be deemed "similarly situated," the employees' roles must be similar "in all of the relevant aspects." *Ercegovich*, 154 F.3d at 352. "In the disciplinary context, employees are 'similarly situated' only if they have 'engaged in acts of comparable seriousness.' Employees are not similarly situated if there are 'differentiating or

mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Waggoner v. Carlex Glass Am., LLC*, 682 F. App'x 412, 415 (6th Cir. 2017) (citations omitted).

Here, while the record is clear that Slone's position was similar in some respects to Faulkner's, it is also undisputed that Slone held additional titles and duties, including certain duties Faulkner was relieved of at her request. [*See* DE 33 at 466–47]. Unlike Faulkner, Slone was responsible for duties at both the Lexington and Louisville campuses and was an ADA coordinator for the Lexington campus. [*Id.* at 396]. Moreover, Faulkner has introduced no evidence showing that Slone received similarly poor performance reviews, what her placement verification numbers were, or that there were no other "such differentiating or mitigating circumstances." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992) (finding plaintiff "failed produce sufficient affirmative evidence to establish that the [other] employees with whom she compares her treatment were 'similarly situated in all respects', or that their conduct was of 'comparable seriousness' to the conduct for which she was discharged").

Accordingly, because Faulkner has failed to produce affirmative evidence showing that Slone was similarly situated in "all of the relevant aspects," *Ercegovich*, 154 F.3d at 352, her prima facie case under the indirect method fails. MedQuest's Motion for Summary Judgment as to Faulkner's discrimination claims under the ADA and KCRA is **GRANTED**.

### ii.    *Failure to Accommodate*

To establish a prima facie case for failure to accommodate, a plaintiff must show that (1) she is disabled under the ADA; (2) she is otherwise qualified for the position, with or without a reasonable accommodation; (3) her employer knew or had reason to know of her disability; (4) she requested a reasonable accommodation; and (5) the employer failed to provide the reasonable

accommodation. *Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 350 (6th Cir. 2015). "If the plaintiff makes this showing, then the burden shifts to the employer to show that the accommodation would cause undue hardship for the employer." *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 560 (6th Cir. 2022). If the employer offers alternative accommodations, the plaintiff must establish both that her preferred accommodation was reasonable, and that the accommodation provided to her was unreasonable. *B.S. v. Carter Cnty. Bd. of Educ.*, 2025 U.S. App. LEXIS 5826, *6-7 (6th Cir. 2025).

MedQuest argues only that Faulkner is not otherwise qualified to perform the essential functions of her job, that the accommodation Faulkner did request—to be allowed to work remotely—was unreasonable, and, finally, that the accommodations offered by MedQuest were reasonable. Because this Court has already determined that a genuine dispute of fact exists as to whether Faulkner was "otherwise qualified" for her position, the Court need only address whether (1) Faulkner's request to work remotely was reasonable and, if so, (2) whether MedQuest's alternate accommodations were also reasonable.

The ADA requires employers to "mak[e] reasonable accommodations." 42 U.S.C. § 12112(b)(5)(A). A plaintiff who requires an accommodation bears the burden of proposing an accommodation and showing that it "seems reasonable on its face." *Blanchet v. Charter Commc'ns, LLC*, 27 F.4th 1221, 1229 (6th Cir. 2022) (quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002)). However, determining the reasonableness of a proposed accommodation is a question of fact. *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998).

At this stage, there is sufficient evidence in the record to find that Faulkner's request to work remotely was not unreasonable on its face. First, it is undisputed that Faulkner (and other MedQuest employees) had already worked remotely for a period of time as a result of the COVID-

19 pandemic. Although other MedQuest employees had been asked to come back to in-person employment, Faulkner had been permitted to stay remote four days per week through the end of 2022 due to her impairment. Second, other courts have found that remote work is a reasonable accommodation even in the context of traditionally "student-facing" positions. *See Davis v. Kalamazoo Pub. Sch.*, No. 1:24-CV-199, 2025 WL 1789308, at *5 (W.D. Mich. June 30, 2025) (finding teacher's request to teach students virtually from home was not unreasonable).

Because working remotely is not unreasonable on its face, the burden shifts to MedQuest to show that the accommodation would cause undue hardship for the employer. "Even where. . . a plaintiff might be able to demonstrate a reasonable accommodation, a defendant can still be granted summary judgment[ ] if there are no genuine issues of material fact controverting the conclusion that the reasonable accommodation would impose an undue hardship on the employer." *King*, 30 F.4th at 568. But when the employer has policies in place showing that it offers the accommodation in other circumstances, the accommodation does not impose an undue hardship. *See id.*

There is at least a dispute of fact as to whether Faulkner's request to work remotely would impose an "undue hardship" on MedQuest. Given the undisputed history of remote work at MedQuest, it is unsurprising that MedQuest does not contest the feasibility of remote work from a logistical standpoint. Rather, MedQuest argues that the request is unreasonable because Faulkner's track record proves that she is unable to discharge certain "essential functions" from home and because her position, specifically, requires her to be on campus. [*See* DE 30-1 at 215]. These are the same arguments MedQuest makes in support of its claim that Faulkner is not "otherwise qualified."

Similarly, there is also a dispute of fact as to whether MedQuest's proposed alternative accommodations were reasonable. The record shows that MedQuest did engage in the interactive process (at least initially) by offering several accommodations aimed at reducing the environmental stimuli which triggered Faulkner's impairment. None of the proposed accommodations, however, would have relieved Faulkner of the need to commute to work five days per week. Faulkner has provided evidence both that her symptoms are triggered by commuting and that her physician recommended she be allowed to telework. According to MedQuest, it did not matter what accommodations were offered because Faulkner would have refused anything other than the specific accommodation she requested. Yet, Faulkner has introduced enough evidence for a reasonable jury to find that her request to work remotely is the only reasonable accommodation that would allow her to perform the essential functions of her positions without significant impairment. That is what the ADA requires under certain circumstances, and those circumstances are questions of fact which the jury must resolve at trial.

MedQuest's Motion for Summary Judgment as to Faulkner's failure to accommodate claims under the ADA and KCRA is **DENIED**.

### iii.    Retaliation

The ADA prohibits employers from discriminating against any individual because such individual has made a charge or request under the ADA. *See McDonald v. UAW-GM Ctr. For Human Res.*, 738 F. App'x 848, 855 (6th Cir. 2018). Significantly, unlike the prima facie case for discrimination claims, Faulkner does not need to show that she was replaced or that similarly situated individuals were treated differently. "Discrimination" in this context "means retaliation—that 'but for' an employee's statutorily protected activity the employer would not have taken the 'adverse employment action.'" *McDonald*, 783 F. App'x at 855. To survive summary judgment,

Faulkner must show that (1) she engaged in protected activity under the ADA, (2) the activity was known to MedQuest, (3) MedQuest took an adverse action against her, and (4) there was a causal connection between the adverse action and the protected activity. *Kirilenko-Ison v. Bd. of Ed. of Danville Indep. Schs.*, 974 F.3d 652, 661 (6th Cir. 2020) (applying the *McDonnell Douglass* framework to retaliation claims). MedQuest must then articulate a legitimate, non-retaliatory reason for the adverse action, to which Faulkner must respond with evidence of pretext. *Id.* To demonstrate pretext, Faulkner must show both that MedQuest's proffered reason "was not the real reason for its action, and that the. . . real reason was unlawful." *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015). For purposes of summary judgment, this means Faulkner must "present evidence from which a reasonable jury could find that [the proffered reason] was not the real reason" for MedQuest's action and that "unlawful retaliation in fact was." *Id.*

As with Faulkner's FMLA retaliation claim, MedQuest does not challenge the first three elements of her prima facie case. MedQuest only argues that (1) Faulkner has not shown a causal connection between her accommodation requests and her termination in October 2023 and (2) that MedQuest had a legitimate, non-discriminatory basis for terminating Faulkner. [DE 30 at 218].

First, MedQuest concludes, without citing the record, that Faulkner "cannot show that, 'but for' her requesting an accommodation under the ADA, she would not have been terminated." [*Id.* at 219]. MedQuest overstates Faulkner's burden. "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 664 (6th Cir. 2020). Faulkner is correct that her burden on summary judgment is to present evidence that allows for "an inference. . . that the adverse action would not have been taken in the absence of the protected conduct." *Kirilenko-Ison*, 974 F.3d, at 664. Viewing the facts in a light most favorable to Faulkner, the Court concludes that Faulkner has

satisfied her burden of establishing a causal connection. Although temporal proximity alone is not enough to show a causal link, it is notable that the discussions to terminate Faulkner, specifically, did not take place until shortly after (or perhaps during) the investigation of her complaint against Ellerbrock. [*See* DE 30-5 at 275-76 (Ellerbrock testifying that the conclusion of investigation and discussions to eliminate Faulkner's position occurred around the "second or third week of September")]. Taken together with the undisputed frustration on the part of her superiors over Faulkner's "push back" to returning to office—in other words, frustration over her requested accommodation—there is sufficient evidence for a finder of fact to infer that the decision to terminate Faulkner was motivated by her ADA-protected actions.

Next, MedQuest suggests that this Court should reject Faulkner's retaliation claim because other courts "have found that an employer's preexisting plans to outsource certain roles should not be considered a discriminatory reason for termination." [*Id.*]. As previously noted, however, the Court finds little support in the record to show that MedQuest had considered terminating Faulkner any time before September 2023, much less that it harbored a "preexisting plan" to outsource her role before she began exercising her ADA rights.

Having found that Faulkner has established a genuine dispute of fact as to her prima facie claim for retaliation, the Court must consider whether MedQuest met its burden of putting forward a legitimate, non-discriminatory reason for terminating her. Eliminating positions as part of a restructuring is a legitimate reason to terminate an employee, as is the decision to terminate employees with a record of poor performance. MedQuest has provided sufficient evidence of both justifications. [*See, e.g.*, DE 30-5 at 254-55, 259-60].

Accordingly, to survive summary judgment, Faulkner must show that MedQuest's proffered reasons either "(i) had no basis in fact; (ii) was insufficient motivation for the

employment action; or (iii) did not actually motivate the adverse employment action." *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 515 (6th Cir. 2021). The Court finds that Faulkner has narrowly met her burden. Although MedQuest has shown that Faulkner was part of a reduction in force, it was not a large reduction. MedQuest alleges that it only terminated two other employees as part of the downsizing. Moreover, it is undisputed that other employees responsible for placements and placement verifications were retained, even after some of those functions were made redundant by MMI. Having already determined that the issue of whether Faulkner poorly performed in her role is a genuine dispute of fact, it follows that a reasonable jury could find that MedQuest's proffered justifications were not the real reasons MedQuest decided to eliminate Faulkner's position (as opposed to the positions of any other employees affected by MedQuest's decision to outsource to MMI).

MedQuest's Motion for Summary Judgment on Faulkner's retaliation claims under the ADA and KCRA is **DENIED**.

### 4. State Law Wage Claims

Finally, MedQuest is correct that Faulkner's failure to respond to MedQuest's arguments with respect to her wage claims under KRS §§ 337.010 and 337.055[4] [DE 20 (Count VI)] means her claims are deemed abandoned. *See Brown v. VHS of Michigan, Inc.,* 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for

---

[4] As noted in footnote 9 to MedQuest's Motion, Faulkner apparently miscites to "KRS §§ 337.858(2) and 529.010." [DE 30-1 at 220, n.9]. The citation to "337.858(2)" appears to be a scrivener's error intended to reference KRS § 337.385(2). Chapter 529 contains criminal statutes applicable to "prostitution offenses," while Section 529.010 sets forth definitions for same. Erroneous citations aside, Faulkner's claim that MedQuest subjected her to "forced labor or services" by withholding her PTO must fail as a matter of law because Faulkner has not met her burden of showing a genuine dispute of fact that any such wages were withheld.

summary judgment."); *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment). However, such a failure does not automatically entitle the movant to judgment. *Kemper v. City of Jackson*, Tennessee, No. 1:22-CV-02689-MSN-JAY, 2025 WL 336211, at *6 (W.D. Tenn. Jan. 24, 2025). A court must still determine whether the movant has demonstrated the absence of a genuine dispute of material fact through proper evidentiary designations. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). While a party's failure to respond to specific arguments can indicate abandonment, it does not relieve the court of its duty to ensure that summary judgment is appropriate based on the properly supported material facts cited by the moving party. *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403–07 (6th Cir. 1992). The scope of this review, however, is not unlimited. Courts are not required to search the entire record *sua sponte* for genuine disputes of material fact but must examine the evidence properly designated by the moving part to determine if summary judgment is warranted. *E.g.*, *Street*, 886 F.2d at 1479–80 (citing *Anderson*, 477 U.S. 242; *Celotex Corp.*, 477 U.S. 317; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

Where a party has not responded, the Court is left with no legal issues to consider on behalf of the non-moving party. When considering "the summary judgment precept that the trial court is under no duty to 'search the entire record to establish that it is bereft of a genuine issue of material facts' and that 'the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact,'" along with the Sixth Circuit precedent on abandonment, "the case is strong for dismissing the uncontested arguments outright." *Doe v. Univ. of Kentucky*, 2021 WL 3519458, at *3 (E.D. Ky. Aug. 10, 2021) (citing *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001)).

KRS § 337.055 requires a terminated employee to be paid in full all wages earned by him/her not later than fourteen days following the date of dismissal. Whether an employee's "wages" include unused vacation pay "is purely a matter of contract between employer and employee." *Berrier v. Bizer*, 57 S.W.3d 271, 281 (Ky. 2001).

Here, MedQuest produced record evidence that Faulkner was terminated and that, per MedQuest's employment policy, any "unused vacation or PTO time" was "forfeited." [DE 30 at 220 (citing MedQuest's "Employee Handbook")]. The burden was therefore on Faulkner to show a genuine dispute of fact as to whether she was entitled to wages that MedQuest did not pay. Faulkner failed to satisfy this burden. MedQuest's Motion for Summary Judgment on Faulkner's wage claims is **GRANTED**.

### III.    CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that Faulkner's Motion to Disregard or for Leave to File Sur-Reply [DE 39] is **DENIED** and MedQuest's Motion for Summary Judgment [DE 30] is **DENIED in part and GRANTED in part**.

Rebecca Grady Jennings, District Judge
United States District Court

September 10, 2025